UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **In re Terrorist Attacks on September 11, 2001** | 03 MDL 1570 (GBD)(SN)<br>ECF Case |

**This document relates to:**

*Ashton et al. v. al Qaeda Islamic Army, et al.*, 02-cv-6977 (GBD)(SN) (and member cases
*Marie Laure Anaya, et al. v. Islamic Republic of Iran*, 1:18-cv-12341 (GBD) (SN) and
*Hugh A. Chairnoff, et al. v. Islamic Republic of Iran*,1:18-cv-12370 (GBD) (SN))

**MEMORANDUM OF LAW IN SUPPORT OF *EX PARTE* APPLICATION
TO PERMIT ATTACHMENT AND EXECUTION PURSUANT TO 28 U.S.C. § 1610(c)**

Plaintiffs are the personal representatives and immediate family members of 15 individuals killed in the terrorist attacks on September 11, 2001, in whose favor collectively this Court has entered nine (9) default judgments pursuant to 28 U.S.C. § 1605A against the Islamic Republic of Iran ("Iran"), awarding more than $671 million in compensatory damages in total.[1] Plaintiffs' judgments against Iran remain unsatisfied.

Plaintiffs hereby apply *ex parte* for an Order pursuant to 28 U.S.C. § 1610(c): (1) finding that a reasonable period of time has elapsed since the entry of Plaintiffs' judgments and the service of notice of each of Plaintiffs' judgments on Iran; and (2) authorizing Plaintiffs to pursue execution of their judgments, under applicable New York and federal law, against Iranian-owned Bitcoin and all proceeds traceable thereto that are currently the subject of a forfeiture proceeding pending in the Eastern District of New York and are in the custody of the United States Government at a virtual currency address known to the United States Government (the "Bitcoin Assets").

---

[1] Plaintiffs and their judgments are identified at Exhibit A to the accompanying Declaration of James P. Bonner executed on January 21, 2026 ("Bonner Decl.").

**FACTUAL BACKGROUND**

A.    <u>Plaintiffs' Judgments</u>

In total, Plaintiffs hold nine (9) judgments for compensatory damages entered by this Court against Iran pursuant to 28 U.S.C. § 1605A.  *See* Bonner Decl. at ¶ 13 and Exhibit A.  Pursuant to 28 U.S.C. § 1608(e), Plaintiffs were required to serve Iran with notice of their judgment in the manner prescribed by 28 U.S.C. § 1608(a).  Plaintiffs have fulfilled that requirement.  *See* Bonner Decl. at ¶¶ 5-13 and Exhibits B-G.

The oldest of Plaintiffs' judgments was served on Iran some 44 months prior to the filing of this application.  *See id.* at ¶ 12 (*Chairnoff* Judgment entered October 5, 2021, *Chairnoff* ECF 64/MDL ECF 7173).  All of the Plaintiffs' judgments were served on Iran at least 15 months prior to the filing of this application.  *See id*.

B.    <u>The Bitcoin Assets</u>

Plaintiffs seek to execute their judgments against the Bitcoin Assets, which are in the custody of the United States Government, and are the subject of a forfeiture proceeding pending in the Eastern District of New York under the caption *United States v. Approximately 127,721 Bitcoin Previously Stored at the Virtual Currency Addresses Listed in Attachment A, and all Proceeds Traceable Thereto*, Civil Action No. 25-cv-05745 (the "Bitcoin Forfeiture Action").  *See* Bonner Decl. at ¶¶ 2-3, 15-17.  Certain victims of Iranian state-sponsored terrorism have filed notices of claim in the Bitcoin Forfeiture Action and have alleged in detail in a separate proceeding that the Bitcoin Assets are the property of Iran and China Investment Development Group (the "Iran-China Group"), which does business on the blockchain as Lubian.com or Lubian, and is an agency or instrumentality of Iran.  *See id*. at ¶¶ 18-21.  The Bitcoin Assets are currently worth in excess of $11 billion.  *See id*. at ¶ 22.

# ARGUMENT

## PLAINTIFFS ARE ENTITLED TO AN *EX PARTE* ORDER UNDER SECTION 1610(C) PERMITTING ATTACHMENT AND EXECUTION OF THEIR JUDGMENTS

The Foreign Sovereign Immunities Act ("FSIA") provides that "[n]o attachment or execution referred to in subsections (a) and (b) of this section shall be permitted until the court has ordered such attachment and execution after having determined that a reasonable period of time has elapsed following the entry of judgment and the giving of any notice required under section 1608(e) of this chapter." 28 U.S.C. § 1610(c). In this instance, Plaintiffs seek attachment and execution not pursuant to FSIA § 1610(a) or (b), but rather pursuant to § 201 of the Terrorism Risk Insurance Act of 2002 ("TRIA"), codified as a note to 28 U.S.C. § 1610. Section 1610(c) does not, by its terms, apply to a TRIA claim. Plaintiffs nevertheless request entry of a § 1610(c) order preliminary to their enforcement efforts out of an abundance of caution, in light of conflicting authority.[2]

Under § 1610(c), "two conditions must be met before execution against sovereign property under a default judgment may be effected: (1) 'a reasonable period of time' must have elapsed since the judgment was entered and sent to the foreign state pursuant to § 1608(e), and (2) a court must have 'ordered such attachment or execution' consistent with [an exception to sovereign immunity from enforcement—in this case, TRIA § 201]." *Walters v. Indus. & Commer. Bank of China, Ltd.*, 651 F.3d 280, 288 (2d Cir. 2011). Plaintiffs meet both conditions.

---

[2] *Compare, e.g., Levin v. Bank of New York,* 2011 U.S. Dist. LEXIS 8946, at *43-45 (S.D.N.Y. Jan. 28, 2011) (in a proceeding seeking turnover of Iranian assets pursuant to TRIA § 201, writs of execution served without first obtaining a § 1610(c) order were held invalid), *with Stansell v. Revolutionary Armed Forces of Columbia*, 771 F.3d 713, 730 (11th Cir. 2014) (holding that § 1610(c) does not govern attachments and executions pursuant to TRIA § 201).

A.     **This Application May Be Determined *Ex Parte***

Neither Iran nor the China-Iran Group is entitled to notice of this application.  "The FSIA is quite clear what a plaintiff must serve on a foreign state before a court may enforce a default judgment against that state: the default judgment.  Service of post-judgment motions is not required." *Peterson v. Islamic Republic of Iran*, 627 F.3d 1117, 1130 (9th Cir. 2010); *In re Heiser v. Islamic Republic of Iran*, 807 F. Supp. 2d 9, 23 (D.D.C. 2011) ("[T]he FSIA requires *only* that a copy of any default judgment be served on defendants, 28 U.S.C. § 1608(e), … and does not demand service of additional post-judgment motions."); *Stansell v. Revolutionary Armed Forces of Columbia*, 771 F.3d 713, 728-29 (11th Cir. 2014) (agencies and instrumentalities of foreign sovereign judgment debtor are not constitutionally entitled to notice before a writ of execution is issued with respect to their blocked assets).

B.     **A Reasonable Period of Time Has Elapsed Following Service of Plaintiffs' Judgments Pursuant to FSIA § 1608(a)**

Section 1608(e) of FSIA requires a copy of any judgment entered against a foreign sovereign by default to "be sent to the foreign state … in the manner prescribed for service in this section." 28 U.S.C. § 1608(e).  Section 1608(a) provides a hierarchy of four different methods for service upon a foreign state, the first two of which are not applicable to Iran. *See* Bonner Decl. ¶¶ 5-6.  Plaintiffs were not required to utilize the third method of service—a form of mail requiring signed receipt dispatched by the Clerk of Court (28 U.S.C. § 1608(a)(3))—because their efforts to serve process on Iran via that method had already proven unsuccessful. *See id.* at ¶¶ 5-6.  Plaintiffs properly effectuated service of each of their nine judgments on Iran through diplomatic channels pursuant to 28 U.S.C. § 1608(a)(4). *See id.* at ¶¶ 5-6 and Exhibits B-G.

Section 1610(c) conditions permission to enforce a default judgment entered against a

4

foreign sovereign upon, *inter alia*, a prior judicial determination that "a reasonable period of time has elapsed following the entry of judgment and the giving of [the] notice required under [§ 1608(e)]." 28 U.S.C. § 1610(c).  Petitioners served their default judgments on Iran between fifteen (15) and forty-four (44) months ago.  See Bonner Decl. ¶ 13 and Exhibits B-G.

A period of more than one year is indisputably "a reasonable period of time" for purposes of § 1610(c).  *See, e.g., Peterson v. Islamic Republic of Iran,* 2013 WL 1155576, at *35 (S.D.N.Y. Mar. 13, 2013) (100 days was "reasonable for the purposes of § 1610(c)"); *Gadsby & Hannah v. Socialist Republic of Romania*, 698 F. Supp. 483, 486 (S.D.N.Y. 1988) (2 months); *Ferrostaal Metals Corp. v. S.S. Lash Pacifico,* 652 F. Supp. 420, 423 (S.D.N.Y. 1987) (3 months); *Pharo Gaia Fund Ltd. v. Bolivarian Republic of Venezuela*, 2021 WL 2168916, at *1 (S.D.N.Y. May 27, 2021) (7 months); *Contrarian Capital Management, LLC v. Bolivarian Republic of Venezuela*, 2024 WL 5264456, at *1 (S.D.N.Y. Dec. 12, 2024) (11 months); *Science Applications International Corp. v. Hellenic Republic*, 2019 WL 1789641, at *2 (S.D.N.Y. April 24, 2019) (11 months); *accord Ned Chartering & Trading, Inc. v. Republic of Pakistan*, 130 F. Supp. 2d 64, 67 (D.D.C. Jan. 26, 2001) (6 weeks, noting that "other courts have found periods such as two or three months sufficient").

Relying on FSIA's legislative history, the U.S. District Court for the Southern District of New York has noted that "[i]n determining whether the period has been reasonable, the courts should take into account procedures, including legislation, that may be necessary for payment of a judgment by a foreign state, and which may take several months; representations by the foreign state of steps being taken to satisfy the judgment; or evidence that the foreign state is about to remove assets from the jurisdiction to frustrate satisfaction of the judgment."  *Gadsby & Hannah,* 698 F. Supp. at 486 (finding two months reasonable) (citing H.R. Rep. No. 1487, 94th Cong., 2d Sess. 30, *reprinted in* 1976 U.S. Code Cong. & Admin. News 6604, 6629).  Iran has

not voluntarily paid any money to any of the Plaintiffs. *See* Bonner Decl. ¶ 14. Counsel is not aware of any record of voluntary payment by Iran to satisfy a judgment obtained in a United States court based upon Iran's terrorist activities. *See id.* Accordingly, with respect to Plaintiffs' judgments, further passage of time is extremely unlikely to result in voluntary payment by Iran.

As of the time of filing this application, there can be no doubt that a reasonable period of time has elapsed with respect to all of Plaintiffs' judgments.

C. **The Bitcoin Assets Are Not Immune From Execution**

Section 201(a) of TRIA states in pertinent part:

> Notwithstanding any other provision of law … in every case in which a person has obtained a judgment against a terrorist party on a claim based upon an act of terrorism, or for which a ***terrorist party*** is not immune under section 1605A or 1605(a)(7) (as such section was in effect on January 27, 2008) of title 28, United States Code, the blocked assets of that terrorist party (***including the blocked assets of any agency or instrumentality of that terrorist party***), shall be subject to execution or attachment in aid of execution in order to satisfy such judgment to the extent of any compensatory damages for which such terrorist party has been adjudged liable.

28 U.S.C. § 1610 (note) (emphases added).

To execute their judgments against the Bitcoin Assets pursuant to TRIA § 201(a), Plaintiffs must establish that:

> (1) [they have] obtained a judgment against a terrorist party;
>
> (2) the judgment is either (a) for a claim based on an act of terrorism, or (b) for a claim for which a terrorist party is not immune under 28 U.S.C. § 1605A (or former 28 U.S.C. § 1605(a)(7));
>
> (3) the assets are "blocked assets" within the meaning of TRIA; and
>
> (4) the execution is sought only to the extent of any compensatory damages [; and
>
> (5)] the blocked assets … are those of either the "terrorist party" or "any agency or instrumentality of that terrorist party," even

6

though the judgment itself need be only against the terrorist party.

*Weininger v. Castro*, 462 F. Supp. 2d 457, 479 (S.D.N.Y. 2006).

### 1. *Plaintiffs' Judgments are Against a Terrorist Party*

TRIA defines the term "terrorist party" to include "a foreign state designated as a state sponsor of terrorism under section 6(j) of the Export Administration Act of 1979 (50 U.S.C. App. 2405(j)) or section 620A of the Foreign Assistance Act of 1961 (22 U.S.C. 2371)." TRIA § 201(d)(4). Plaintiffs' judgments are against Iran, which has been designated as a state sponsor of terrorism pursuant to § 6(j) of the Export Administration Act of 1979 since January 19, 1984. *See In re Terrorist Attacks on September 11, 2001*, 2025 WL 2166082, at *4 (S.D.N.Y. Feb. 28, 2025).

### 2. *Plaintiffs' Judgments Are for Claims for Which Iran is not Immune From Liability*

Plaintiffs' judgments are for claims related to supporting terrorism, for which Iran is not immune from liability under 28 U.S.C. § 1605A.

### 3. *The Bitcoin Assets Are Blocked Asset of an Agency or Instrumentality of Iran*

The Bitcoin Assets have been credibly alleged to be the property of the Iran-China Group, an agency or instrumentality of Iran. *See* Bonner Decl. at ¶¶ 18-21. TRIA defines the term "blocked asset" to mean "any asset seized or frozen by the United States under section 5(b) of the Trading with the Enemy Act (50 U.S.C. App. 5(b)) or under sections 202 and 203 of the International Emergency Economic Powers Act (50 U.S.C. 17101; 1702) ("IEEPA")." TRIA §201(d)(2)(A). Effective February 6, 2012, pursuant to, *inter alia*, IEEPA, President Obama blocked "[a]ll property and interests in property of the Government of Iran" including its agencies and instrumentalities "that are in the United States, that hereafter come within the United States, or that are or hereafter come within the possession or control of any United States person…." *See* Executive Order 13599—*Blocking Property of the Government of Iran and*

7

*Iranian Financial Institutions*) at §§ 1(a) and 7(d).  Hence, because the Bitcoin Assets are "in the United States"—in the custody of the United States Government (*see* Bonner Decl. at ¶ 15)—they constitute "blocked assets of an[] agency or instrumentality of [a] terrorist party" against which Plaintiffs have obtained judgments pursuant to 28 U.S.C. § 1605A.  TRIA, § 201(a).

### 4. Plaintiffs' Uncollected Compensatory Damages Plus Post-Judgment Interest Exceed $671 Million

Plaintiffs seek to execute against the Bitcoin Assets only to the extent necessary to satisfy their compensatory damages awards totaling $671 million plus post-judgment interest.  *See* Bonner Decl. at ¶ 2.

Accordingly, pursuant to TRIA § 201(a), Plaintiffs are entitled to execute their judgments against so much of the Bitcoin Assets as may ultimately be necessary to satisfy the compensatory damages awarded to Plaintiffs against Iran, plus post-judgment interest thereon.

## CONCLUSION

For the foregoing reasons Plaintiffs respectfully request the Court to enter an Order pursuant to 28 U.S.C. § 1610(c), in the form submitted herewith, (1) finding that a reasonable period of time has elapsed since the entry of each of Plaintiffs' judgments and the giving of notice required under 28 U.S.C. § 1610(e); and (2) directing the Clerk of the Court to issue a writ of execution with respect to property and interests in property of Iran, and/or property or interests in property of Iran's agencies or instrumentalities in the United States, including but not limited to the Iran and China Investment Development Group doing business as Lubian.com or LuBian, in the United which have been blocked by reason of Executive Order No. 13599 effective February 6, 2012, including 127,271 Bitcoin in the custody of the United States Department of Justice and all proceeds traceable thereto that are currently the subject of a forfeiture proceeding pending in the Eastern District of New York, to the extent necessary to satisfy Plaintiffs' judgments against Iran for compensatory damages and post-judgment interest thereon; and

8

authorizing the use of such further procedures available under Rule 69 of the Federal Rules of Civil Procedure in aid of execution against such assets.

Dated: January 21, 2026
White Plains, New York

**FLEISCHMAN BONNER & ROCCO LLP**
By: /s/ James P. Bonner
James P. Bonner (jbonner@fbrllp.com)
Patrick L. Rocco (procco@fbrllp.com)
Susan M. Davies (sdavies@fbrllp.com)
445 Hamilton Avenue, Suite 402
White Plains, New York  10601
Telephone:  646-415-1399

Joseph Peter Drennan (admitted *pro hac vice*)
218 North Lee Street, Third Floor
Alexandria, Virginia 22314-2631

Patrick M. Donahue (admitted *pro hac vice*)
P. Joseph Donahue (admitted *pro hac vice*)
THE DONAHUE LAW FIRM, LLC
18 West Street
Annapolis, MD 21401

P. York McLane (admitted *pro hac vice*)
LAW OFFICE OF P. YORK MCLANE
14015 Park Dr., Ste. 111
Tomball, Texas 77377

*Counsel for Anaya and Chairnoff Plaintiffs*